IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DYHEMA R.,[1] | ) |
| Plaintiff, | ) ) ) |
| | ) No. 20 C 6554 |
| v. | ) ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dyhema R.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 15, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 18, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.   **Procedural History**

On June 6, 2017, Plaintiff filed a claim for DIB and SSI, alleging disability since June 18, 2016, due to sciatica, herniated discs, and low back pain. [Dkt. 10-1, R. 267-68, 303.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 155, 185.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 24, 2019. [R. 48-142.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 50, 58-96.] Impartial medical expert ("ME") Sai R. Nimmagadda and vocational expert ("VE") Linda M. Gels also testified. [R. 96-140.] On October 24, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 4-26.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 34-36.]

II.  **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 4-26.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 18, 2016. [R. 6.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with sciatica and radiculopathy, and depression. [R. 6.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 7-9.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can stand and walk for 4 hours in an 8-hour workday; she can never

climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs; she can occasionally stoop, crawl, crouch, kneel, and balance; she must avoid concentrated exposure to vibration and moderate exposure to hazards; she can understand, remember, and carry out instructions for simple, routine, repetitive tasks with sufficient concentration, persistence, and pace to timely and appropriately complete those tasks; and she can adapt to occasional routine workplace changes. [R. 9-24.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work. [R. 24-25.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 25-26.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at

either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits."

*Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ erred by (1) failing to review Plaintiff's physical and aqua therapy records in her decision, and (2) not explaining the absence of limitations in the RFC for both sitting and repositioning between sitting and standing. [Dkt. 15, Pl.'s Mem. at 6-15; dkt. 20, Pl.'s Reply at 2-11.] The Commissioner argues in opposition that the ALJ reasonably evaluated all of the evidence, including Plaintiff's physical and aqua therapy records, to determine that Plaintiff could perform a reduced range of light work and that the ALJ adequately explained her rejection of sitting and repositioning limitations. [Dkt. 19, Def.'s Mem. at 2-13.] For the reasons that follow, the Court affirms the ALJ's decision.

### A. Physical and Aqua Therapy Records

Plaintiff first argues that the ALJ erred by failing to evaluate all relevant evidence in determining Plaintiff's RFC because the ALJ did not review Plaintiff's physical and aqua therapy records. [Pl.'s Mem. at 6-9; Pl.'s Reply at 2-4.] Plaintiff contends that the ALJ's failure to discuss those records in her decision amounted to ignoring evidence supporting a disability finding and violated Social Security Ruling 96-8p, which lists examples of the relevant evidence that must be considered and instructs that "[c]areful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe

5

limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p, 1996 WL 374184, at *5. [Pl.'s Mem. at 7-8.] According to Plaintiff, the records at issue contain important evidence about Plaintiff's functional limitations and reports of her subjective symptoms. [*Id.* at 7-9.]

An ALJ may not discuss only evidence that favors her conclusion but must confront the evidence that does not support her conclusion and explain why it was rejected. *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018). Any discussion of the evidence, however, is necessarily selective, and an ALJ is not required to address every piece of evidence in the record. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). Ultimately, an ALJ "is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)).

The Commissioner responds in part to Plaintiff's argument by countering that the ALJ "explicitly reviewed and considered plaintiff's physical and aqua therapy records." [Def.'s Mem. at 4.] This contention, however, is not fully accurate. As Plaintiff correctly points out, the ALJ did not include details from these records or cite to them specifically in her decision. [Pl.'s Reply at 2-3.] Rather, the ALJ cited other medical treatment records that reported the fact and frequency of Plaintiff's physical and aqua therapy treatment. [R. 13-14, 21 (citing R. 626 (April 2017 primary care treatment note), R. 715 (January 2018 treatment note from Dr. Laich)).]

In any event, the Court concludes that the ALJ's omission of a detailed review of the underlying physical and aqua therapy records was not error because the records do not amount to an entire line of evidence that was ignored. *See Deborah M.*, 994 F.3d at 788. First, the ALJ did

6

not wholly overlook all evidence concerning Plaintiff's physical and aqua therapy treatment: she recognized that Plaintiff's "low back pain was treated with a home exercise program and another referral to physical therapy, including aquatic therapy 2-3 times per week for 12 weeks." [R. 14 (quoting R. 715).] The ALJ therefore considered that one of the ways Plaintiff treated her degenerative disc disease was through physical and aquatic therapy. [R. 21.] Next, the underlying therapy records that were not explicitly discussed do not amount to a line of evidence supporting a disability finding. At most, the information gleaned from these records is simply representative of other, more probative evidence in the record that the ALJ considered and confronted in determining Plaintiff's RFC. [*See* R. 9-24.] *See Deborah M.*, 994 F.3d at 788-89 (affirming ALJ's decision where omitted evidence "did not reveal any substantially different information" about plaintiff's condition).

To establish the importance of the records at issue, Plaintiff cites the long-term therapy goals listed in them, which "include sitting for 7-10 minutes, decreasing pain, carrying objects less than or equal to 5 lbs., improving ADL capacity, ambulating up to 5 blocks, and decreasing pain level during prolonged activity," and argues that they support significant functional limitations. [Pl.'s Mem. at 9.] But the ME testified that he had reviewed these records and that often therapy goals are set on an incremental basis, representing smaller goals that build as the therapy continues. [R. 122.] Moreover, the ALJ evaluated Plaintiff's and her doctors' reports of her functional abilities, which were more direct and relevant evidence of her RFC than the long-term therapy "goals." For example, the ALJ recounted Plaintiff's testimony that she sometimes had days where the pain was less prevalent but she was never without it and that she could walk 2 blocks before starting to feel pain; stand for 40 minutes before she felt pressure and pain in her back (which radiated down to her legs); sit for 30-40 minutes before feeling crushing pressure

7

and needing to change position; lift and carry a box of milk but could not carry individual gallons; and not bend at all. [R. 9-10.] The ALJ pointed out Plaintiff's reports in treatment records that she could only lift very light weights and not walk more than a quarter mile. [R. 12-13.] The ALJ also evaluated Plaintiff's doctors' opinions, including Dr. Laich's April 2018 medical opinion, in which he opined, among other things, that Plaintiff could frequently lift and carry less than 10 pounds, stand and walk for less than 2 hours in a workday, sit for less than 2 hours in a workday, sit 45 minutes at a time before needing to change position, and occasionally bend. [R. 16-17 (citing R. 813-17), 23.] Among other reasons, the ALJ found Dr. Laich's opinion unpersuasive because it was unsupported by his own examinations and treatment notes. [R. 16-17, 23.] After reviewing this evidence and much more, the ALJ concluded that Plaintiff was limited to performing light work with additional restrictions, including no more than 4 hours of standing or walking in an 8-hour day, occasional bending, and frequently lifting and carrying no more than 10 pounds. [R. 9, 24.]

Additionally, Plaintiff cites her own statements about her symptoms in the physical and aqua therapy records, including that she experienced increased symptoms from "'sitting on hard surfaces,' 'walking six blocks' (which left [Plaintiff] in tears), bending, and lifting" and that she has difficulty "remembering some things" because of her pain. [Pl.'s Mem. at 9.] The ALJ, however, fulfilled her obligation under SSR 96-8p by considering other evidence of Plaintiff's subjective symptoms found elsewhere in the record. 1996 WL 374184, at *5. Among Plaintiff's complaints, the ALJ explicitly acknowledged that Plaintiff reported that she had problems remembering things and that she could not bend at all, walk more than a quarter mile, or sit more than 40 minutes without crushing pain. [R. 9-10, 12-13.] The ALJ assessed Plaintiff's extensive testimony, subjective reports during doctors' visits, and activities of daily living in determining

8

that Plaintiff's subjective reports were not entirely consistent with the medical evidence in the record, including the MRI results and the examination findings of "no significant loss of muscle strength, consistent sensation loss, reflex issues, or even consistent abnormal gait." [R. 21; *see* R. 9-16, 20-21.] That the ALJ did not specifically consider additional subjective reports contained in Plaintiff's physical and aqua therapy records does not undercut the rest of this reasonable analysis. Thus, the ALJ's analysis was logical and connected the evidence to her RFC conclusions, which was all that was required of the ALJ. *See Beardsley*, 758 F.3d at 837 (ALJ required to build a "logical bridge" from evidence to result).

In sum, although the ALJ did not cite any specific portion of the underlying physical and aqua therapy treatment records in her decision, this failure does not amount to reversible error because the ALJ did not ignore a line of evidence contrary to her ultimate RFC conclusion; the omitted evidence did not add any information about Plaintiff's condition that was materially different than what was elsewhere in the record and discussed by the ALJ. *See, e.g., Deborah M.*, 994 F.3d at 788-89; *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021) (unpublished) (affirming ALJ's decision where physical therapist's reports were not discussed but ALJ acknowledged the same symptoms identified in the reports and plaintiff's treatment with physical therapy). The ALJ here considered the objective medical evidence, the treatment records, the doctors' opinions, and Plaintiff's subjective symptom reports in concluding that Plaintiff could perform a reduced range of light work. [*See* R. 9-24.] Accordingly, the ALJ's decision is supported by substantial evidence overall, and the Court will not disturb it. *Gedatus*, 994 F.3d at 901.

9

B.   **Sitting and Repositioning Limitations**

Plaintiff next argues that the ALJ erred by not including in her decision a narrative discussion concerning any limitations in the RFC on sitting and repositioning between sitting and standing, despite there being ample record evidence about those potential limitations. [Pl.'s Mem. at 9-14.] In particular, Plaintiff contends that the ALJ erred by not considering Plaintiff's testimony and the opinions of her treating providers as to these potential limitations. [*Id.* at 13-14.]

This argument is unavailing, however, because the ALJ adequately discussed the evidence surrounding sitting and repositioning limitations and ultimately reasonably rejected any such limitations. As discussed above, the ALJ reviewed Plaintiff's subjective complaints that she could sit for 30 to 40 minutes before starting to feel pain and needing to change position and ultimately found her subjective reports only partially consistent with the record. [R. 10-11.] Later in her decision, the ALJ acknowledged that Plaintiff "alleged [that she had] difficulties with both being on her feet and prolonged sitting." [R. 20.] The ALJ ultimately found restrictions on standing and walking warranted but did not adopt any similar restrictions on prolonged sitting. [R. 20-21.] Moreover, the ALJ also considered the mixed doctors' opinions as to sitting and repositioning limitations, which were as follows: (1) Dr. Rubin's and Dr. Castro's July 2019 opinions that Plaintiff could sit for up to 30 minutes at a time, for up to 7 hours total in a day, with position changes every 15 minutes for 1-2 minutes at a time, [R. 17-19, 23 (citing R. 1089-90)]; (2) Dr. Burke's October 2018 opinion that Plaintiff could sit up to 2 hours at a time for 8 hours in a day, [R. 17, 23 (citing R. 994-95)]; (3) Dr. Laich's April 2018 opinion that Plaintiff could sit for less than 2 hours in a workday and sit 45 minutes at a time before needing to change position, [R. 16-17, 23 (citing R. 814)]; (4) the ME Dr. Nimmagadda's

10

September 2019 opinion that no sitting or repositioning limitations were warranted, [R. 16-17, 23-24; *see* R. 106-07, 120-21]; and (5) the state agency medical consultants' September 2017 and July 2018 opinions that no such limitations were warranted, [R. 21-22 (citing R. 149-50, 178-79)].

In general, and also as to these particular potential limitations, the ALJ found most persuasive the testimony and opinion of the impartial ME Dr. Nimmagadda. The ME testified that the limitations opined by Dr. Rubin and Dr. Castro—that Plaintiff could sit for up to 30 minutes at a time (for a total of 7 hours) and needed to change position every 15 minutes—were not supported by the record because Plaintiff's disc issues in the lumbar spine were rather mild. [R. 17; *see* R. 106-07.] The ME explained that he would expect to see greater inflammatory changes or nerve root irritation, muscle atrophy, and nerve root compression than he had in Plaintiff's medical records in order to warrant these limitations. [*Id.*] Dr. Nimmagadda also testified that alternating positions is a "very subjective determination," that it is difficult to quantify the amount of time and alternating positions needed during a work period, and that it could vary; he further explained that normal breaks during the workday could accommodate a need to stretch and relieve pain. [R. 120-21.] Overall, the ALJ found Dr. Nimmagadda's opinion thoroughly explained with direct cites to the medical records and appropriate consideration of Plaintiff's subjective complaints, including her testimony that was not considered by any other medical source in the record. [R. 23-24.]

The ME's testimony also guided the rest of the ALJ's weighing of the medical opinions, including with respect to the alleged sitting and repositioning limitations. The ALJ found "generally persuasive" the state agency physicians' opinions that no sitting and repositioning limitations were warranted, explaining that they were consistent with the treatment and objective

evidence and the ME's opinion. [R. 21.] Although evidence submitted after those opinions indicated continued complaints of pain, they also demonstrated some functional relief with additional treatments, and the ALJ concluded that Plaintiff's RFC had accordingly remained the same. [*Id.*] The ALJ rejected Dr. Rubin's and Dr. Castro's opinions, specifically their limitations on walking and standing and the position changes, on several grounds, finding the opinions unsupported by Dr. Castro's treatment notes, which showed normal motor strength with no spasms. [R. 23.] The ALJ also thought the opinions were not supported given the mild MRI findings and Plaintiff's level of treatment. [*Id.*] Similarly, the ALJ did not find Dr. Laich's or Dr. Burke's opinions persuasive because of the ME's testimony and the lack of support in the treatment notes, in particular the findings of normal muscle strength and the lack of muscle wasting and nerve compression. [R. 23.; *see, e.g.,* R. 635-37, 706-08, 715-15, 717-19, 723-24, 728-30, 820-22, 988-89.]

The ALJ's extensive discussion of the medical evidence and weighing of the medical opinion evidence with respect to the sitting and repositioning limitations differentiates this case from the one on which Plaintiff relies to support her assertion of error. [Pl.'s Mem. at 10-11.] In *Richard F. v. Berryhill*, No. 17 C 6552, 2019 WL 1651734, at *5 (N.D. Ill. Apr. 17, 2019), the Court found error where the ALJ had overlooked plaintiff's testimony and her doctor's opined limitation on alternating between sitting and standing. Here, in contrast, the ALJ did not overlook evidence that supported these limitations; in fact, she clarified throughout her decision that she was crediting Dr. Nimmagadda's opinion on these topics over the other doctors' opinions and specifically the doctor's explanation as to why no repositioning limitation was needed. [*See* R. 16-23.]

12

In her reply, Plaintiff seemingly recognizes that the ALJ adequately discussed whether sitting and repositioning limitations were warranted and accordingly shifts her argument to challenge the ALJ's crediting of the non-examining doctors over Plaintiff's treating physicians Dr. Laich and Dr. Castro,[3] citing numerous examples of supposed "cherry-picking" of evidence in which the ALJ engaged to support her conclusions. [Pl.'s Reply at 4-10.] This argument is unavailing as well, however. Because Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c, which provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinion or prior administrative medical finding. Instead, the ALJ considers a variety of factors in assessing medical opinions, but the "most important factors"—and the only ones that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ fulfilled her obligation to discuss the medical opinion evidence according to those two primary factors, and any assertion of cherry-picking is simply not supported by the ALJ's detailed analysis. Throughout the ALJ's decision, she detailed the variable physical examination findings of the doctors and the objective medical evidence, and ultimately concluded that the findings overall did not support Dr. Laich's or Dr. Castro's opinions (and indeed, not Dr. Rubin's or Dr. Burke's, either). [*See* R. 12-23.] The Court does not address each assertion of error individually because they do not alter the Court's overall conclusion that the ALJ adequately considered the big picture. Although Plaintiff may not agree with the ALJ's decision to credit the ME's opinion over those of her treating doctors, it was well within the ALJ's purview to do so.

---

[3] Drs. Burke and Rubin only reviewed Plaintiff's medical records and did not examine nor treat Plaintiff. [*See* R. 994-95, 1089-90.]

13

*See, e.g., Michelle G. v. Berryhill*, No. 18 C 408, 2019 WL 2368618, at *9 (N.D. Ill. June 3, 2019) ("However, an ALJ may rely on a testifying medical expert whose opinion is based on objective findings such as x-rays and physical exams.")

Accordingly, because the ALJ adequately discussed and concluded that any sitting or repositioning limitations were not supported by the record, the ALJ was not required to include them in the RFC. *Cf. Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (explaining that ALJ's RFC assessment must include all of plaintiff's limitations supported by the medical record). Even if the Court might weigh the evidence differently in the first instance, it is not permitted to reweigh the evidence where no ground exists on which to disturb the ALJ's reasoned decision. *Elder*, 529 F.3d at 413.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 15] is denied, and the Commissioner's motion for summary judgment [dkt. 18] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 3/13/23

_____
BETH W. JANTZ
United States Magistrate Judge

14